UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TARIQ ABDULAZIZ, and             :
NEUROSTRATEGIES, INC.,           :
                                 :
     Plaintiffs,                 :
                                 :
V.                               :     Case No.  3:17-CV-663(RNC)
                                 :
RODERICK L. BREMBY,              :
KATHLEEN M. BRENNAN,              :
JOHN F. McCORMICK,               :
KATHY BRUNI,                     :
PHYLLIS E. HYMAN,                :
LARA K. STAUNING,                :
DORIAN J. LONG,                  :
LYNWOOD PATRICK, Jr., and        :
STATE OF CONN. DEP'T             :
OF SOCIAL SERVS.,                :
                                 :
     Defendants.                 :

RULING AND ORDER

Plaintiffs Tariq Abdulaziz and Neurostrategies, Inc., providers of services under a program administered by the Connecticut Department of Social Services ("DSS"), bring this suit under 18 U.S.C. § 1983 against eight current and former DSS officials and employees in their individual and official capacities.[1] Among other claims, plaintiffs complain that DSS has initiated investigations into their activities as service providers in retaliation for testimony given by Mr. Abdulaziz

---

[1] The individual defendants are Commissioner Roderick L. Bremby, Deputy Commissioner Kathleen M. Brennan, Director of the Office of Quality Assurance John F. McCormick, Director of Community Options Kathy Bruni, former Staff Attorney Phyllis E. Hyman, Staff Attorney Lara K. Stauning, Administrative Program Manager Dorian J. Long, and former Director of Program Monitoring and Review Lynwood Patrick, Jr.

before the Connecticut General Assembly.  Defendants have moved to dismiss the action in its entirety.  For reasons that follow, the motion is granted.

I. Facts

The second amended complaint (ECF No. 73) contains the following allegations.  Since 2004, plaintiffs have provided medical services through the Acquired Brain Injury Waiver Program ("ABI Waiver Program" or "Program"), which is administered by DSS under Connecticut's Medicaid program.

From 2004 to 2015, plaintiffs' Provider Enrollment Agreements with DSS were different from other Medicaid providers' agreements.  Unlike other providers, who annually or bi-annually signed a "standard" Provider Enrollment Agreement, plaintiffs were "arbitrarily and unilaterally forced" by DSS to sign non-standard agreements in 2004, 2014, and 2015.  As a result, plaintiffs suffered unspecified additional administrative costs.  During the relevant period, defendant McCormick expressed concerns to other DSS employees, including defendants Stauning and Long, that ABI Waiver Program providers were signing nonstandard agreements.  Nonetheless, the nonstandard agreements remained in force until 2016.  In that year, for the first time, DSS "arbitrarily" required that plaintiffs sign a standard agreement, which they signed under "protest" and "duress."

According to plaintiffs, the regulations governing ABI

Waiver Program providers have been "unlawful" since they began participating in the Program.  Plaintiffs' 2004 agreement with DSS required them to follow regulations issued in 1999 that were "out of date, unenforceable and adopted and/or promulgated unlawfully."  In March 2013, realizing that the 1999 regulations were unlawful, the individual defendants (except for Patrick) "either individually and/or in concert with one another," published a Notice of Intent to Adopt Regulations in the Connecticut Law Journal.  These new regulations were also "unlawful," and DSS began to "arbitrarily" implement them in April 2013.

On March 28, 2014, Abdulaziz testified before the Connecticut General Assembly regarding proposed legislation to implement "ABI Waiver Program II," a new program.[2]  He testified that he opposed the legislation because he believed it would significantly reduce funding for treating certain clients.  At the same hearing, DSS Commissioner Bremby testified in favor of the new program.  Abdulaziz criticized Bremby's testimony and stated that Bremby was "disingenuous" about cost estimates.

Plaintiffs allege that defendants have taken various actions against them in retaliation for Abdulaziz's testimony.[3]  On April

---

[2] A transcript of the proceedings is available at https://www.cga.ct.gov/2014/appdata/chr/2014APP00328-R001030-CHR.htm.

[3] The second amended complaint alleges that Abdulaziz also lodged complaints with defendants and others regarding DSS's use of nonstandard Provider Agreements and "unlawful" regulations but no specific facts are alleged with regard to any such complaints.

21, 2014, twenty-three days after Abdulaziz testified, plaintiffs were informed by DSS that their client records were under review. This was the first such review since they began participating in the ABI Waiver Program. Plaintiffs refer to this as the "ruse" record review. In October 2014, McCormick assigned defendant Patrick, whom plaintiffs describe as a "rogue" DSS employee,[4] to investigate a complaint about plaintiffs that DSS allegedly had received from a third party. McCormick also referred the complaint to the Federal Health and Human Services Office of the Inspector General ("HHS"), the Office of the Connecticut Chief State's Attorney and the Connecticut Attorney General's Office ("state law enforcement"). In September 2017, in response to other alleged complaints about plaintiffs, McCormick again ordered a review, investigation and referral to HSS and state law enforcement. Plaintiffs have not been notified of the results of any of these investigations and maintain an "unblemished professional record."

Plaintiffs allege that defendants have taken the following additional actions in retaliation for Abdulaziz's testimony. From 2015 to 2017, DSS Deputy Commissioner Brennan made a series of false accusations and threats against plaintiffs. In emails, he stated that plaintiffs had committed "abusive program practices" and interfered with "client care managers." Brennan

---

[4] Patrick was terminated in June 2015 after he pleaded guilty to mail fraud.

also accused them of allowing an assistant to provide services without certification, failing to submit monthly reports, operating under conflicts of interest, and misrepresenting their client work. The emails threatened plaintiffs with nonpayment. Defendants have also failed to respond to certain inquiries made by plaintiffs. DSS has failed to process Abdulaziz's applications for mental health and substance abuse certifications and refused to respond to plaintiffs' requests for copies of "ABI Waiver Program Service Plans."

## II. Legal Standard

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Non-conclusory factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are disregarded. Id. A claim satisfies the plausibility standard if it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citations omitted).

## III. Discussion

Plaintiffs claim that defendants have violated the First Amendment and the Due Process Clause of the Fourteenth Amendment.

They also claim that Commissioner Bremby and Deputy Commissioner Brennan are liable under § 1983 for the alleged constitutional violations committed by their subordinates. In addition to damages, plaintiffs seek to enjoin the defendants from continuing to violate their constitutional rights. They also bring state law claims for breach of contract, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), interference with business relations ("IWBR") and interference with contract relations ("IWCR").

    A. *First Amendment*

Plaintiffs claim that all the individual defendants retaliated against them in violation of the First Amendment. Defendants argue that their motion to dismiss should be granted because the complaint does not state a claim for relief and the individual defendants are entitled to qualified immunity. I agree.[5]

First Amendment retaliation claims brought by government contractors are analyzed using the same tests that apply to claims by public employees. See Golodner v. Berliner, 770 F.3d

---

[5] Defendants also argue that plaintiffs lack standing. "To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must demonstrate (1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Strubel v. Comenity Bank, 842 F.3d 181, 187–88 (2d Cir. 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). Plaintiffs' allegations that they are victims of unlawful retaliation by the defendants are sufficient to meet these requirements.

196, 207 (2d Cir. 2014) (citing Bd. Of Cty. Comm. v. Umbehr, 518 U.S. 668 (1996)).  "To state a prima facie case of retaliation under § 1983, a public employee must demonstrate that: (1) his or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination."  Washington v. Cty. of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).

Plaintiffs' First Amendment retaliation claim against McCormick, insofar as it is based on Abdulaziz's testimony and the "ruse" record review, satisfies elements (1) and (3) but not (2).  The testimony was constitutionally protected because Abdulaziz testified as a citizen on a matter of public concern.  See Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Garcetti v. Ceballos, 547 U.S. 410 (2006)).[6]  The timing of the "ruse" record review can support an inference of retaliatory motive based on temporal proximity.  Cf. Bennett v. Goord, 343 F.3d 133, 138 (2d Cir. 2003) (period of several days sufficient); Gayle v. Gonyea, 313 F.3d 677, 683 (2d Cir. 2002) (six day period

---

[6] In moving for summary judgment, defendants argued that Abdulaziz's testimony was not protected because he was motivated by his own private business interests.  However, they no longer take that position.

sufficient).[7] And although plaintiffs have not identified the person or persons who initiated the review, it can be inferred that McCormick oversaw the review and was aware of the testimony.[8] However, DSS's review of a provider's records does not constitute "adverse employment action" for purposes of a First Amendment retaliation claim.

To satisfy the adverse employment action requirement, plaintiffs must allege adverse action that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Washington, 373 F.3d at 320 (quotation omitted). "[W]hether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." Zelnik v. Fashion

---

[7] Defendants argue that plaintiffs cannot show a causal connection between Abdulaziz's speech and the "ruse" record review because the review was not a "ruse." In support of this argument, defendants submit affidavits and other documents showing that the review was initiated because of third-party complaints about plaintiffs' billing practices. Defendants argue that these materials can be considered at this juncture because they have contested jurisdiction under Rule 12(b)(1). See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016). However, with respect to their Rule 12(b)(6) motion for failure to state a claim, the Court may consider only "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Defendants have not shown that the affidavits and other documents fall into any of these categories.

[8] He was Director of the Office of Quality Assurance and later referred the matter (or a similar matter) to HSS and state law enforcement.

Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (quotation omitted). Typical adverse employment actions "include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," though "lesser actions" may suffice in some circumstances. Id. (quoting Morris, 196 F.3d at 110); see also Montero v. City of Yonkers, N.Y., 890 F.3d 386, 401 (2d Cir. 2018) ("Such actions may also include a pattern of harassment, where, using an 'objective standard,' a plaintiff shows that 'the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.'" (quoting Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002)).

The "ruse" record review would not deter a similarly situated Medicaid provider from exercising his or her First Amendment rights. The amended complaint states that plaintiffs were required to follow certain regulations under their Provider Agreement.[9] At the time of the record review, the regulations provided that, "Upon written request presented to the provider, [DSS] may be given immediate access to, and permitted to review and copy any and all records and documentation to support claims billed to Medicaid." Conn. Agencies Regs. § 17b-260a-16 (2013). Plaintiffs can hardly complain about an allegedly unwarranted

---

[9] Plaintiffs have alleged that these regulations are "unlawful" and that they signed their Provider Agreement under "protest" and "duress." But these allegations are conclusory in nature.

record review when they agreed to allow record reviews as a matter of course.

Moreover, the second amended complaint does not explain how the record review adversely affected the plaintiffs. In the absence of such allegations, the most generous inference is that they received requests to produce documents and complied with the requests. Numerous district courts in this Circuit have held that "investigations and threats of disciplinary action are generally not, standing alone, sufficient to plead an adverse employment action" for purposes of a First Amendment retaliation claim, especially when the plaintiff suffers no "tangible adverse consequence resulting from the charges or investigation." See Anemone v. Metro. Transp. Auth., 410 F. Supp. 2d 255, 266 (S.D.N.Y. 2006) (collecting cases). The Second Circuit has held that for purposes of a Title VII retaliation claim - which is assessed under an "equivalent" standard, see Zelnik, 464 F.3d at 227 - the initiation of "fact-finding" investigations "consisting of only brief inquiries, and resulting in no discipline," were not adverse employment actions because the investigations "were merely 'trivial harms' or 'petty slights or minor annoyances.'" See Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 569-70 (2d Cir. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Nothing in the facts alleged here supports a different conclusion.

Plaintiffs' claim based on McCormick's actions in the fall of 2014, when he assigned Patrick to investigate a third-party complaint and subsequently referred the complaint to state law enforcement, also fails to allege an action sufficiently adverse to support a claim.  No facts are alleged concerning the effect of these challenged actions on the plaintiffs.  There is no allegation, for example, that plaintiffs were forced to defend themselves in any proceeding.  Cf. Rolon v. Ward, 345 F. App'x 608, 610 (2d Cir. 2009) ("Being forced to defend against disciplinary charges may constitute an adverse employment action." (citing Albert v. City of Hartford, 529 F. Supp. 2d 311, 335 (D. Conn. 2007)).  Rather, plaintiffs merely allege that they were the subjection of an investigation.  An investigation, in itself, does not constitute an adverse employment action.  See Boylan v. Arruda, 42 F. Supp. 2d 352, 357 (S.D.N.Y. 1999) ("[S]imply undergoing an investigation is not sufficient to constitute 'adverse employment action,' even though the allegedly retaliatory investigation in this case was criminal rather than civil in nature and was conducted by an outside agency rather than internally."); accord Fasoli v. City of Stamford, 64 F. Supp. 3d 285, 305 (D. Conn. 2014).  Thus, plaintiffs have failed to state a claim on which relief can be granted.[10]

---

[10] Plaintiffs do not satisfy the elements of a prima facie case with regard to the other alleged retaliatory actions because temporal proximity is lacking and they provide no other evidence supporting an inference of a causal connection between the

-11-

Even assuming plaintiffs' allegations could be construed to support a First Amendment retaliation claim, the individual defendants would be entitled to qualified immunity. Public officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" D.C. v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). "[T]he need for 'clearly established' law is satisfied if the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood that her conduct was unlawful." Lynch v. Ackley, 811 F.3d 569, 583 (2d Cir. 2016) (citations omitted). In the First Amendment context, the Second Circuit has cautioned against "defin[ing] the right in question . . . too broadly": "[t]he relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but

---

challenged actions and the testimony. Brennan's communications with plaintiffs began ten months after the testimony; the second "ruse" record review occurred more than two years after the testimony; and defendants' alleged failure to process Abdulaziz's requests and applications began almost three years after the testimony. See Housel v. Rochester Inst. of Tech., 6 F. Supp. 3d 294, 308 (W.D.N.Y. 2014) ("claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation.") (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001); Hollander v. American Cyanamid Co., 895 F.2d 80 (2d Cir. 1990)).

-12-

whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech." Lewis v. Cowen, 165 F.3d 154, 166–67 (2d Cir. 1999).

Plaintiffs do not cite, and research has not disclosed, any case holding that initiating a record review, audit, or other investigation can constitute an adverse action for purposes of a First Amendment retaliation claim. Rather, as just discussed, case law suggests that this type of action is insufficient to support a claim. See also Everitt v. DeMarco, 704 F. Supp. 2d 122, 137 (D. Conn. 2010) (granting qualified immunity under similar circumstances). Because it was not clearly established that the action alleged here could violate the First Amendment, the individual defendants are entitled to qualified immunity.

B. *Due Process Claims*

Plaintiffs claim that the defendants have violated their rights to substantive and procedural due process. To state a procedural due process claim, plaintiffs must allege facts showing that they have been deprived of a liberty or property interest protected by the Constitution and that the deprivation occurred without due process. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011). To state a substantive due process claim, they must allege facts showing that the defendants engaged in action that was not just incorrect or ill-advised but arbitrary and conscience-shocking. Cunney v. Bd. of Trustees of Vill. of Grand

View, N.Y., 660 F.3d 612, 626 (2d Cir. 2011).

Plaintiffs claim that McCormick's referral of a complaint to HHS and state law enforcement violated both procedural and substantive due process. But they have not explained how this referral - which resulted in no charges - deprived them of a constitutionally protected liberty or property interest. Cf. S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984) (due process not "offended when a federal administrative agency, without notifying a person under investigation, uses its subpoena power to gather evidence adverse to him"). Moreover, McCormick's referral is not conscience-shocking. See Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense . . ." (quotation marks and citations omitted)).

Plaintiffs claim that other actions by the defendants violated due process but they do not provide factual allegations required to support a due process claim. They allege in vague and conclusory terms that they were "arbitrarily and unilaterally forced" to sign non-standard provider agreements and denied information and guidance about the agreements. These allegations are insufficient to support a claim. Cf. Kelly Care, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991) ("To establish a property interest in continued participation in the Medicaid

-14-

program, [plaintiff] must demonstrate a 'legitimate claim of entitlement' to such uninterrupted participation." (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Similarly insufficient are plaintiffs' vague and conclusory allegations that they were subjected to "harassing correspondence" by the defendants and that their reputations and business interests have been harmed. See Kelly Care, 930 F.2d at 177 ("To prevail on such a liberty-interest claim, a plaintiff must establish that the information was stigmatizing, false, and publicized by the state actor.").

C. *Negligent Supervision*

Plaintiffs seek to hold Director Bremby and Deputy Director Brennan liable for the other defendants' alleged constitutional violations. To hold a supervisor liable for a subordinate's actions, a plaintiff must allege facts showing that the supervisor was personally involved in violating the plaintiffs' constitutional rights. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). As already explained, plaintiffs do not allege any constitutional violations. Therefore, the supervisory liability claims must be dismissed.

D. *State Law Claims*

Plaintiffs state law claims are also insufficiently supported to withstand the motion to dismiss.

Plaintiffs allege that DSS breached its contract with them

by "arbitrarily and unilaterally" changing the terms of the contract. DSS argues that, as a state agency, it is immune from suit under the Eleventh Amendment. Plaintiffs have not contested DSS's sovereign immunity defense, and I agree that the Eleventh Amendment bars this claim. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984) (Eleventh Amendment bars state law claim for damages in federal court).

Plaintiffs also bring IIED and NIED claims. An IIED claim requires a showing of conduct that is "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 194 (D. Conn. 2000). As discussed above in the context of substantive due process, plaintiffs have not made such a showing with respect to any of defendants' actions.

To maintain an NIED claim, "a plaintiff has the burden of pleading that the 'defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm.'" Id. at 197 (quoting Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 398 A.2d 1180 (1978). In the employment context, "even an employer's wrongful

employment actions are not enough to sustain a claim for negligent infliction of emotional distress." Id. (citation omitted). That is, "the complaint must include allegations of unreasonable conduct in the manner in which the employer carried out an employment action." Id. (citation omitted). The second amended complaint does not meet this requirement.

Finally, plaintiffs claim all the defendants are liable for IWBR and IWCR. To establish these claims, plaintiffs must allege "(1) the existence of a contractual or business relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." Rioux v. Barry, 283 Conn. 338, 351, 927 A.2d 304, 312 (2007) (citations omitted). Plaintiffs allege that defendants' actions jeopardized plaintiffs' business relationships with clients and others in the Program community and interfered with certain contractual relationships. However, plaintiffs do not allege how defendants' actions interfered with these relationships or what contracts were affected. See DiNapoli v. Cooke, 43 Conn. App. 419, 428 (1996) (plaintiff must show "that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit").

IV. Conclusion

Accordingly, defendants' motion to dismiss is granted. If plaintiffs have a good faith basis for believing that they can allege facts to cure deficiencies discussed in this ruling, they may file a motion seeking leave to file a third amended complaint and attach the proposed third amended complaint. To be timely, any such motion must be filed within 21 days. If no such motion is filed, the Clerk will enter judgment dismissing the action.

So ordered this 8th day of August 2018.

/s/
Robert N. Chatigny
United States District Judge